# *Ex parte* Williams.

*Application for Mandamus, on Order Abating Suit.*

1. *Inebriates' estates; powers and duties of trustee; death of inebriate pending suit by trustee.*—The estate, powers and duties of the trustee

of an inebriate's estate, under statutory provisions (Code, §§ 2502-06), like the committee of a lunatic in England, terminate with the death of the inebriate, though he still remains liable to account; and having filed a bill in equity to set aside a conveyance of land executed by the inebriate after his appointment, the suit abates by the death, and can not be continued or revived in the name of the heirs of the inebriate jointly with the trustee.

APPLICATION by petition in the name of Robert S. Williams, for a writ of *mandamus*, or other appropriate writ, directed to Hon. THOS. M. ARRINGTON, judge of the City Court of Montgomery, sitting in equity, requiring him to set aside an order for the abatement of a suit lately pending in said court, wherein the petitioner was plaintiff, as trustee of his son, Thomas W. Williams, since deceased, and J. R. Pinkston was defendant; and to allow the suit to be revived and prosecuted in the names of the decedent's sisters, as his heirs at law, jointly with the petitioner. The material facts are stated in the opinion of the court.

BRICKELL, SEMPLE & GUNTER, for the petitioner.

SOMERVILLE, J.—The application is for *mandamus*, or other remedial writ, to compel the judge of the City Court of Montgomery, sitting in equity, to vacate an order abating a suit brought in that court by the petitioner, R. S. Williams, against one J. R. Pinkston, and refusing to allow its prosecution to be continued in his name jointly with others, who were proposed by the amendment to the bill to be made co-plaintiffs in the cause.

The petitioner had been appointed trustee of his son, one William Thomas Williams, under the provisions of sections 2502-2506 of the Code of 1886 (Code, 1876, §§ 2815-2819), which provide that, "when an unmarried man, over twenty-one years of age, is, by reason of intemperance, unfit to manage his estate, or is wasting or squandering it, and is thereby in danger of being reduced to poverty and want, his brothers, or sisters, or next of kin, or any or either of them, may . . . file their bill in chancery to preserve the estate of such intemperate person from further waste, and for general relief."—§ 2502.

The trustee appointed under this section is charged with authority and duty to "manage and superintend the affairs of the estate, and from the avails thereof provide for the support of such intemperate person, or of his wife and children, in the event he has married after the institution of the suit;

which support must be suitable to the means and estate of such intemperate person."—§ 2504.

The chancellor is invested with authority to secure the estate against further waste, by injunction or otherwise, pending the proceeding, and may order the estate to be restored to the *cestui que trust,* on satisfactory proof of his restoration.

The suit of Robert S. Williams against Pinkston, pending in the City Court, was instituted for the purpose of setting aside a conveyance of land made by the *cestui que trust,* or ward, to the defendant, after the complainant's appointment as trustee under the foregoing statute. The ground upon which the suit was declared to be abated was the death of the ward, William Thomas Williams, *pendente lite.* The co-complainants proposed to be introduced as parties were heirs of the deceased.

The statutes in question are analogous to those regulating the estates of lunatics in England, which are said to have been declaratory of the common law, and which authorized the King to act as "*parens patriæ*—as the person to take care of those who are incompetent to take care of themselves." This function he exercised through the agency of the Chancery Court, by the appointment of a "committee," or trustee, who, as said by Lord Redesdale in *Ex parte Fitzgerald,* 2 Sch. & Lef. 431, "is considered as a mere bailiff, appointed by the Crown, and under its control, to take care of the property [of the lunatic], acting according to the duty imposed on the Crown, and liable to account, to censure, to punishment, and to be removed, if he shall misconduct himself." It was said, moreover, to be the duty of the court "to see that the committee [or trustee] does not use his office to the prejudice of the lunatic in his life-time, or of those entitled to his property after his death." The death of the lunatic was said to determine the trustee's authority, although he was still subject to the control of the court; and "the court," it was observed, "ought not to permit the committee [or trustee] to interefere with the title [of the heirs] to the possession. It must consider him in the situation of a bailiff, manager, or receiver; as one who is to act merely officially, and not to interfere in any manner with the rights of third persons, on determination of his authority as committee." "He continues liable to account, and liable to all the consequences of any misconduct on his part, and to act in delivering possession as the court shall direct."

In *Matter of Colvin*, 3 Md. Ch. 278, the inquiry arose, as to what effect the death of the lunatic would have on the trust; and the question is discussed at length. It was held to determine the office of the committee, "that officer, by the death of the lunatic, becoming *functus officio*," and the only power retained over him, as such, by the Chancery Court was held to be, to compel him to account, and deliver possession of the property, if any he has, as the court shall direct. In other words, upon the death of the lunatic, the jurisdiction of chancery remains only to the extent, and for the purpose of having the necessary accounts taken, and directing the fund or estate in possession of the trustee to be paid over, or delivered to the party or parties entitled. It was further held, that chancery could not, after the death of the lunatic, administer the estate for the benefit of creditors, or adjudicate questions of conflicting rights between opposing claimants. This is evidently upon the ground, that the trust relationship has been extinguished, except for the purpose of accounting, and the preservation of the estate by the court *pendente lite*.

The same view is taken in *Guarard v. Gaillard*, 15 S. C. (L. R.) 22; the court holding that the committee, invested with the full power of management, had no legal title to the property of the lunatic, and that "the office of committee expired at the death of the lunatic." If in possession, the trustee was held, however, to the duty of taking care of the estate of the lunatic, for the benefit of those who may have succeeded to the inheritance, until ordered by the court to account and give it up, although, it was said, he might act at his peril without such order.

Mr. Adams, in his work on Equity, summarizes the principle thus: "On the death of the lunatic, the power of administration is at an end, except as to orders which have been already made, or which are consequential on reports or petitions already made or presented. But the committee continues under the control of the court, and will be ordered, on the application of the lunatic's heirs, to deliver up the possession of the estate." In a note to the Seventh American Edition, p. 297 (*298), the doctrine of the Maryland and South Carolina cases above cited is concisely stated, and approved by the editor. See, also, *Dean's Appeal*, 90 Penn. St. Rep. 106; Schouler's Dom. Relations, 424-425; 1 Lewin on Trusts, 346.

Under the principles settled by these authorities, it is clear

[Pollak v. Davidson.]

that the death of William Thomas Williams, the ward of the trustee, terminated the trust relationship existing between him and the petitioner, as his trustee under the statute, who was clothed only with the power of management and control, not with the legal title of the ward's estate. The extinguishment of the trust terminated his further power of control, except to take proper care of any trust fund or property in his possession, and to account to the Chancery Court. He had no further power to collect rents, or to sue for possession of the property of the decedent. The suit in question was, therefore, properly ordered by the court to abate.

The court had no authority, after such abatement, to allow the suit to be prosecuted in the name of the heirs. The proposed introduction of entirely new parties complainant was the introduction of a new and distinct cause of action, which is not authorized by the statute of amendments.

The above view of this case renders it unnecessary that we should consider the suggestion as to the invalidity of the chancellor's decree appointing the petitioner trustee of the ward's estate. For the purpose of this decision, we have considered that decree to be valid—a point in regard to which there is some doubt.

The application is denied.